IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| DEBORAH JOHNSON,<br><br>Plaintiff,<br><br>vs.<br><br>DG RETAIL LLC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:08-CV-123 TS |

This matter is before the Court on Defendant Dollar General's Motion for Summary Judgment. This action is brought under the Fair Labor Standards Act ("FLSA").[1] Plaintiff alleges she was not paid required overtime while she was employed by Defendant as a Store Manager. Defendant argues Plaintiff was exempt under the Act. For the reasons discussed below, the Court will grant the Motion.

**I. Facts**

The following facts are undisputed. Plaintiff was employed by Defendant from

---

[1] 29 U.S.C. § 201, *et seq*.

November 2006 until May 2008. The Complaint states that Plaintiff was hired and immediately became Store Manager of the Brigham City store.[2] During her deposition, Plaintiff stated that she first worked in a store in Clearfield "for awhile" and then in Ogden "for awhile."[3] Plaintiff was promoted to Store Manager, opened and ran the Brigham City store beginning in February 2007.[4] She remained a Store Manager until her employment was terminated in May 2008. Before becoming Store Manager in 2007, Plaintiff was a Store Manager Candidate and was paid hourly.[5] Plaintiff concedes she was paid for all hours worked, including overtime, while she maintained an hourly position.[6]

As Store Manager, Plaintiff was responsible for the goings-on at the store and around its premises. Plaintiff was in charge of the store and was responsible for the initial opening of the store all on her own.[7] Before the "doors" could be opened Plaintiff had to "go to the City . . . to get signatures and stuff like that."[8] Plaintiff stated that she was acting as the company's representative to sign the necessary papers.[9] In connection with the grand opening of the store, in

---

[2]Complaint, Docket No. 1, ¶ 6.

[3]Johnson Depo., Docket No. 32-4, at 45:1-2.

[4]*Id*. at 44:1-14.

[5]*Id*. at 43:15-18; 46:12-16.

[6]*Id*. at 240:5-13.

[7]*Id*. at 62:2-7.

[8]*Id*. at 65:3-7.

[9]*Id*. at 11-14.

an effort to get people through the door, Plaintiff arranged a car show in the parking lot to help attract attention.[10] Plaintiff recruited, hired, evaluated and trained the employees.[11] Similarly, Plaintiff was responsible for scheduling and assigning tasks to the employees.[12] Plaintiff also ordered merchandise, managed inventory, managed store equipment, oversaw the store's financial dealings in terms of cash count, register balancing, and bank deposits.[13]

Plaintiff made it a point, as part of her own management style, to focus on store cleanliness, customer service, and general safety of both employees and customers.[14] Plaintiff stated that even when she was doing a specific other task she was constantly multi-tasking to make sure the store was running properly and to be mindful of shoplifters.[15] Plaintiff understood that she was responsible for the profitability of the store and made efforts to improve and increase that profitability on a frequent basis.[16] Plaintiff testified that everything she did as a Store Manager was in an attempt to increase sales.[17]

---

[10]*Id*. at 63:6-15; 63:21-23.

[11]*Id*. at 157:23-158:1; 186:4-8; 60:23-61:11; 111:9-112:3; 213:20-25; 214:1-6; 214:7-217:4; 219:1-7; 57:14-17; 88:13-18; 89:4-18.

[12]*Id*. at 73:1-2; 98:13-16; 98:23-99:3; 149:8-149:24.

[13]*Id*. at 167:24-168:1; 168:19-23; 191:16-18; 165:8-166:2;154:13-15; 160:22-161:15; 165:17-20.

[14]*Id*. at 103:9-11; 105:4-6;114:16-25; 179:9-14.

[15]*Id*. at 108:19-109:7.

[16]*Id*. at 115:1-3; 101:17-102:13; 129:25-130:2.

[17]*Id*. at 179:15-18.

Plaintiff was the only salaried employee at the store and recognized that she was the boss of the store.[18] In addition to her salary, Plaintiff was also eligible for quarterly and annual bonuses based on both her individual and her store's performance.[19] Because she was Store Manager, Plaintiff was sent to a two-week training program specifically for Defendant's Store Managers.[20] None of the other employees in Plaintiff's store received the same type of formalized training.[21]

Even though Plaintiff had a great deal of responsibility, Plaintiff still reported to a District Manager. Plaintiff had two different District Managers during her term. Although Plaintiff reported to a District Manager, she stated that she probably only saw the first District Manager three times.[22] Additionally, Plaintiff complained of this District Manager's lack of hands-on supervision, that she was "left alone" and opened the new branch "on her own" without the District Manager's assistance.[23] On the occasions this District Manager did visit the store, he would stay for two to three hours and leave notes for things needing improvement.[24] It was up to

---

[18]Docket No. 31, at 12; Docket No. 32-4, at 178:4-6.

[19]Docket No. 31, at 12; Docket No. 32-4, at 127:23-25 (Plaintiff also notes that although she knew was technically eligible for such bonuses because her store was unprofitable she never received a bonus).

[20]Docket No. 32-4, at 139:23-141:1; 141:9-25; 145:7-9.

[21]*Id*. at 143:9-15.

[22]*Id*. at 69:1-17.

[23]*Id*. at 61:23-62:7.

[24]*Id*. at 133:4-9.

Plaintiff, as the Store Manager, to implement the changes and "make sure everybody followed through."[25]

Plaintiff's second District Manager was more engaged, but Plaintiff remained accountable for everything that happened at the store.[26] This District Manager began with visits to the store every couple of months but towards the end of Plaintiff's tenure would visit on a more regular basis.[27] Plaintiff estimates that even when this District Manager was visiting more frequently it was never more than "once every two weeks."[28] The District Manager evaluated Plaintiff's performance based on store performance and leadership, including theft management, profit improvement, store cleanliness, store friendliness, store success process, management, ability, team effectiveness, training and team development, and employee and customer safety.[29]

## II. Standard of Review

Summary judgment is proper if the moving party can demonstrate that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.[30] The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.[31]

---

[25]*Id*. at 134:2-6.

[26]*Id*. at 137:9-18.

[27]*Id*. at 69:21-70:7.

[28]*Id*. at 70:8-10.

[29]*Id*. at 179:2-186:19.

[30]*See* FED. R. CIV. P. 56(c).

[31]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[32] "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial, if he does not so respond, summary judgment, if appropriate, shall be entered against him."[33]

### III. Discussion

Plaintiff alleges she was not paid the overtime she was entitled to under the FLSA while she was employed as a Store Manager. Defendant argues that Plaintiff was a manager and, as such, was exempt from the FLSA provisions requiring the payment of overtime. Plaintiff counters that she was not exempt.

"The FLSA requires employers to pay employees at least one and one-half times their regular pay for hours worked in excess of forty hours per week."[34] Employees in a bona fide executive or administrative capacity are exempt.[35] "The defendant has the burden of proving that

---

[32]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[33]FED. R. CIV. P. 56(e)(2).

[34]*Hays v. City of Pauls Valley*, 74 F.3d 1002, 1005 (10th Cir. 1996) (citing 29 U.S.C. § 207(a)).

[35]*Id.*; 29 U.S.C. § 213(a)(1).

an employee falls within an FLSA exemption."[36] "An employee must fit 'plainly and unmistakenly within the exemptions's terms,' and the FLSA exemptions are to be narrowly construed."[37]

"An employee qualifies as an exemption if he satisfies one of two tests in the FLSA regulations, the long test or the short test."[38]

> The short test applies to employees earning more than $250 per week. An employee satisfies the short test if her 'primary duty' is management and includes the customary and regular supervision of two or more full-time employees. An employee who fulfills these requirements is deemed to have met all of the requirements of the long test and thus 'it is not necessary to test that employee's qualifications in detail' under that test.[39]

Whether an employee's primary duty is management is a fact-based inquiry guided in part by the amount of time spent on management duties.[40]

> A determination of whether an employee has management as his primary duty must be based on all the facts of a particular case . . . Time alone . . . is not the sole test . . . . (Other) pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the wages paid other employees for the kind of nonexempt work performed by the supervisor.[41]

---

[36]*Hays*, 74 F.3d at 1005.

[37]*Id*. at 1006 (quoting *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir.), *cert denied*, 516 U.S. 965 (1995)) (internal quotations omitted).

[38]*Id*.

[39]*Id*. at 1006-07; 29 C.F.R. § 541.1(f); 29 C.F.R. § 541.119.

[40]*Hays*, 74 F.3d at 1007; 29 C.F.R. § 541.103; *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994).

[41]*Donovan v. Burger King Corp*., 672 F.2d 221, 225 (1st Cir. 1982); 29 C.F.R. § 541.103.

7

"The supervision of other employees is clearly a management duty."[42] "Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'"[43] "[O]ne can still be 'managing' if one is in charge, even while physically doing something else."[44] Because the fifty percent (50%) rule, designating time of managerial verse non-managerial tasks, is not conclusive, it seems better directed at situations where the employee's management and non-management functions are more clearly severable.[45] If an employee engages fifty percent (50%) of his time doing non-managerial work, but simultaneously engages in supervision, customer relations, merchandise, and other management duties, he will be considered to have management as his primary duty.[46] When an employee's managerial tasks take up less than fifty percent (50%) of their time, three other factors must be considered: 1) the relative importance of managerial duties versus non-managerial tasks; (2) the employee's relative freedom from supervision; and (3) the relationship between the employee's salary and the wages paid employees doing similar non-exempt work.[47]

---

[42] *Burger King*, 672 F.2d at 226; *see also* 29 C.F.R. § 541.102(b).

[43] *Burger King*, 672 F.2d at 226 (quoting *Anderson v. Federal Cartridge Corp.*, 62 F. Supp. 775, 781 (D. Minn. 1945)).

[44] *Id*.

[45] *Id*.; 29 C.F.R. § 541.103.

[46] *Burger King*, 672 F.2d at 226.

[47] *See* 29 C.F.R. § 541.700; *see also Reich v. Wyoming*, 993 F.2d 739, 742 (10th Cir. 1193).

Defendant argues that Plaintiff fits squarely into the exemption. First, during her tenure as Store Manager, Plaintiff was paid a weekly salary of $538.40. Therefore, the "short test" is applicable. Second, Defendant argues that Plaintiff's "primary duty" was managerial in nature. As Plaintiff readily admitted in her deposition, she was "in charge" of the store. She stated that she was the person most responsible for the successful operations and profits of the store. Plaintiff stated that she spent twenty (20) to thirty (30) percent of her time performing managerial duties. Even though Plaintiff did not state that she spent more than fifty percent (50%) of her time on managerial tasks, she still fits into the exemption.

The *Burger King* court stated that "a person in charge of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions."[48] Similarly, the Tenth Circuit and the district courts within it have held that an employee's primary duty is management, even when that employee spends more than fifty percent (50%) of his time on non-managerial tasks.[49] The Eleventh and the Eighth Circuits have also both found that non-managerial tasks taking up more than fifty percent (50%) of an employees time was "not a controlling factor under the regulations" and did not impact the executive exemption because the manager's value to his employer was his role as a manager.[50]

In reviewing the other relevant factors to this determination, the Court finds Plaintiff's

---

[48] *Burger King*, 672 F.2d at 227.

[49] *See Hays*, 74 F.3d at 1007; *Masilionis v. Falley's Inc.*, 904 F. Supp. 1224, 1229 (D. Kan. 1995) (collecting cases).

[50] *Murray v. Stuckey's Inc.*, 939 F.2d 614, 618 (8th Cir. 1991); *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1271 (S.D.Fla. 2004) *aff'd*, *Moore v. Tractor Supply Co.*, 140 Fed. App'x 168 (11th Cir. 2005) (unpublished).

"primary duty" was managerial in nature. In terms of the relative importance of her managerial duties verse non-managerial duties, Plaintiff was responsible for getting the final paperwork with the city signed so that the store could open. Plaintiff also spent two weeks at a manager training seminar. Plaintiff did all of the scheduling and training of her employees in the store. Plaintiff was evaluated based on her managerial skills and the profitability of the store. Plaintiff agreed that even when she was doing "non-managerial work," such as stocking shelves, she was constantly multitasking and keeping her eyes on the store because "[she] had to."[51] Plaintiff stated that she was "ultimately in charge" and was "the boss" of the store.[52] Finally, Plaintiff also stated that even when she was not at the store she would receive calls at home about how to handle certain situations or to solve a problem at the store.

The second factor of this sub-test deals with the employee's freedom from supervision. Plaintiff stated numerous times in her deposition that she was in charge of the store. She stated that she was the only one involved in the day-to-day operations of the store.[53] Plaintiff stated that one of her managers visited the store only a few times in the first year she was manager, and her second manager eventually increased the visits to once every few weeks. Plaintiff was not supervised by anyone else in the store or on-site on a daily, or even a weekly basis.

The last factor deals with the manager's pay relative to the other employees who perform

---

[51]Docket No. 32-4 at 108:19-109:1.

[52]*Id*. at 46:25-47:3-4.

[53]*Id*. at 139:12-15.

only non-exempt work.[54] Courts have found that managers earn significantly more when they earn twice the amount, forty-two percent (42%) more than subordinates, and where they are the only employee eligible for a bonus while making at least $250 more per month than an assistant manager.[55] Plaintiff originally earned $538.40 in guaranteed salary on a weekly basis.[56] She was subsequently given a raise and earned $546.54.[57] Additionally, she was eligible for bonuses. The Assistant Store Managers earned approximately $297 per week, or $8.50 per hour.[58] General employees were paid $6.50 an hour, if they worked twenty hours a week, the maximum allowed, they would have received approximately $110 per week.[59] Regardless of the standard used, the gap between Plaintiff's wages and the wages paid to the other employees at the store was significant.

Plaintiff also fits within the second prong of the "short test." Plaintiff admitted that she not only directed the work of two or more full time employees, but was in charge of scheduling and training those employees as well.[60] Before the store was opened and in the process of

---

[54] *Masilionis*, 904 F. Supp. at 1230.

[55] *Id.*; *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 868 (N.D. Tex. 2001); *Moore*, 352 F. Supp. 2d at 1278.

[56] Docket No. 32-4 at 130:22-25; *see also id.* at 73.

[57] *Id.*; *see also id.* at 82.

[58] *Id.* at 130:12-19.

[59] *Id.* at 131:1-25.

[60] *Id.* at 60:5-12; 148:15-19; 97:25-98:5.

opening, Plaintiff supervised as many as thirty employees.[61] Once the store was fully functioning she managed as many as six or seven employees in any given week.[62]

The Court finds that Defendants have shown that Plaintiff fits into the exemption. Plaintiff was in charge of her store with relatively little to no hands-on supervision. Plaintiff stated repeatedly that she was in charge of the store and treated the store as if it were her own business. Plaintiff took phone calls and solved store problems even when she was not working.[63] Plaintiff made significantly more than the other employees at the store and was eligible for a bonus. Finally, Plaintiff managed more than two full-time employees.

In arguing that Plaintiff does not fit into the exemption, Plaintiff first establishes further "facts" by reproducing portions of the handbook that she later relies on in an attempt to show that she was left with little, if any, discretion. However, in *Burger King* when presented with a situation where the Assistant Manager performed many managerial tasks that were "governed by highly detailed, step-by-step instructions contained in Burger King's 'Manual of Operating Data'"[64] allowing little to no variation, the *Burger King* court found that the Assistant Managers were still exempt. Specifically, the court stated, "[t]he fact that Burger King has well-defined policies and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring that company policies are carried out constituted the 'very essence of supervisory

---

[61]*Id*. at 59:4-21.

[62]*Id*. at 60:5-12; 97:25-98:5; 148:15-19.

[63]*Id*. at 77:14-78:11.

[64]*Burger King*, 672 F.2d at 223.

12

work.'"[65] Still, Plaintiff argues that the statute states that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."[66] However, Plaintiff testified that she was not told how to find employees,[67] that she made hiring decisions based on her own judgment after watching the employees work during the initial set-up for the store,[68] that she was basically handed the store without guidance and was "winging it,"[69] and that she used the manual as a reference when she could not get a question answered but mainly for equipment issues.[70] Therefore, the Court finds that the manual does not show a material issue of fact as to whether Plaintiff fits within the exemption because it is undisputed that in addition to the manual, Plaintiff was required to and did frequently exercise her own judgment.

Plaintiff also argues that she was merely part of a management team that ran the store. In support of this argument Plaintiff argues that the Assistant Manager and the Lead Associate both helped run the store and shared the same Level 5 register designation as the Store Management. However, in her deposition Plaintiff admitted that she was the only one the District Manager held accountable for the store. Also, Plaintiff, not the District Manager, evaluated the performance of

---

[65]*Id*. at 226 (citing *Anderson v. Federal Cartridge Corp.*, 62 F.Supp. 775, 781 (D. Minn. 1945), *aff'd*, 156 F.2d 681 (8th Cir. 1946)).

[66]Docket No. 39, at 7; 29 C.F.R. § 541.202(e).

[67]Docket No. 32-4, t 59:6-21.

[68]*Id*. at 13-25.

[69]*Id*. at 62:1-7; 140:16-21.

[70]*Id*. at 152:2-3; 152:10-15; 154:9-12.

13

both the Assistant Manager and the Lead Associate. Only Plaintiff, as Store Manager, was sent to the two-week management training. Moreover, when the Assistant Store Manager had a question he or she would call Plaintiff even when she was not in the store.[71] Therefore, the Court finds that the undisputed evidence shows that even though there was a "management team," Plaintiff was its leader and, as discussed previously, she was "in charge of" and "the boss" of the store.

Plaintiff further argues that she was not paid significantly more than the rest of the employees. Plaintiff attempts to break down her salary into an hourly rate based on the approximately sixty (60) hours a week she stated that she worked compared to the thirty-five (35) hours the Assistant Managers were allowed to work. This argument collapses on itself as it shows that as Store Manager, Plaintiff was not confined to work a certain number of hours. As Store Manager she felt responsible for and worked the number of hours she thought necessary. Moreover, even if her salary was broken down on an hourly basis it would be based on a forty (40) hour work week.[72] Accordingly, when Plaintiff was first hired she was paid $538.46 per week which amounts to $13.46 per hour, and after her raise when she was paid $546.54 her rate was $13.66 per hour. Compared to the flat rates of $8.50 and $6.50 that the Assistant Manager and regular employees were compensated by, the Court finds Plaintiff was compensated significantly more.

Finally, Plaintiff argues that Defendant has failed to satisfy the "short test." Plaintiff

---

[71]*Id*. at 77:14-78:11.

[72]*Id*. at 98:9-12.

asserts a statutory argument that, when dealing with a plaintiff who does not spend more than fifty percent (50%) of her time on managerial tasks, all of the other four factors a court is instructed to consider must be met because the factors "are connected by the conjuctive, 'and.'"[73] The Court finds no merit in this argument. Plaintiff relies on the following passage from *Hays*:

> when an employee spends less than 50 percent of his time on management four other factors should be considered: the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision and the wages paid other employees for the kind of nonexempt work performed by the supervisor.[74]

The relevant regulation does not refer to requirements, it addresses "factors to be considered," and does not specifically mention any factor dealing with frequency of discretionary powers.[75] Admittedly, the regulation gives examples of factors to be considered, but also states that a court's consideration is not limited to those factors expressly listed.[76] Therefore, the regulation does not mandate any certain number of or any specific factors be met. Although the regulation does use "and," it does so only to add additional factors a court might consider. Therefore, even if the Court chose to consider frequency as a factor, the possibility that this factor might not be

---

[73]Docket No. 39 at 7.

[74]*Hays*, 74 F.3d at 1007.

[75]29 C.F.R. § 541.700 (stating that the factors to be considered in determining the primary duty of an employee to be the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee).

[76]*Id*. ("Factors to be consider when determining primary duty of an employee include, but are not limited to . . .").

met would not prevent a finding that Plaintiff was exempt, because it is only a factor and not a requirement. Regardless, the Court finds this factor is met. Plaintiff ran the store on a daily basis without supervision, she used her discretion on a daily basis to reprimand and/or train employees as she saw fit, and she made the weekly schedule.

### IV. Conclusion

Based on the above, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 30) is GRANTED. It is further

ORDERED that the Clerk of Court to enter a judgment in favor of Defendant and against Plaintiff and close this case forthwith.

DATED   May 13, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge